UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| FCC, LLC, d/b/a First Capital, a Florida limited liability company,<br><br>　　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>TARGET CORPORATION, a Minnesota corporation,<br><br>　　　　　　　　　Defendant. | Civil Action No. _____<br><br>**COMPLAINT** |

　　　　Plaintiff FCC, LLC, d/b/a First Capital ("First Capital" or "Plaintiff") for its Complaint against Defendant Target Corporation ("Target" or "Defendant"), states and alleges as follows:

## NATURE OF THE ACTION

　　　　1.　　First Capital brings this action to recover $2,269,041, plus interest, owed by Defendant for goods sold and delivered by First Capital's factored-client SFCA, Inc. ("SFCA"), which Target has refused to pay.

## THE PARTIES AND SFCA

　　　　2.　　First Capital is a Florida limited liability company headquartered in Boca Raton, Florida, with its principal place of business at Boca Raton, Florida, and is engaged in the business of, among other things, commercial finance.

　　　　3.　　SFCA at relevant times was a Delaware corporation headquartered in Reading, Pennsylvania, with its principal place of business at Reading, Pennsylvania, and was engaged in the business of manufacturing baby furniture.

　　　　4.　　Defendant Target is a Minnesota corporation headquartered in Minneapolis, Minnesota, with its principal place of business in Minnesota, and is engaged in the

merchandising and sale of various products including toys and juvenile products through stores located throughout the United States, as well as through the e-commerce site "Target.com."

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1), which confers original jurisdiction upon this Court for civil actions where the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different States.

6. First Capital is a limited liability company formed under the laws of Florida and headquartered in Boca Raton, Florida. It has one member, FCC Holdings, LLC, which is also a Florida limited liability company headquartered in Boca Raton, Florida. FCC Holdings, LLC has one member, FCC Holdings, Inc., which is a Delaware corporation headquartered in Boca Raton, Florida, with its principal place of business in Florida.

7. Target is a national retailer incorporated under the laws of Minnesota and is headquartered in Minneapolis, Minnesota, with its principal place of business in Minnesota.

8. The amount in controversy, exclusive of interest and costs, exceeds $75,000.

9. Target is subject to personal jurisdiction in this forum because Target is incorporated in Minnesota and maintains its principal place of business in Minnesota.

10. Venue is proper in this court pursuant to 28 U.S.C. § 1391(a) because Target resides in Minnesota and because a substantial part of the events giving rise to this action occurred in Minnesota.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

**A.**   **The Loan and Security Agreement**

11. On April 9, 2008, First Capital entered into a Loan and Security Agreement with SFCA (the "Loan and Security Agreement"). Attached as **"Exhibit A"** is a true and correct copy of the Loan and Security Agreement.

12. Pursuant to the Loan and Security Agreement, First Capital agreed to provide SFCA with cash advances. In exchange for First Capital's agreement to lend SFCA funds, SFCA assigned all of its accounts receivable to First Capital and granted First Capital a first-priority security interest in its accounts.

13. Specifically, § 6(a) of the Loan and Security Agreement provides:

> (a) **Grant of Security Interest.** To induce [First Capital] to accept this Agreement and to make Loans to [SFCA] from time to time pursuant to its terms, [SFCA] hereby grants to [First Capital], for itself and as agent for any Affiliate of [First Capital], a security interest in, and assigns, mortgages and pledges to [First Capital], for itself and as agent for any Affiliate of [First Capital], all of [SFCA's] right, title and interest in and to all of [SFCA's] property, whether real or personal, tangible or intangible, now owned or existing or hereafter acquired or arising, including all of the following (collectively, the "Collateral"):
>
> (i) all Accounts, Inventory, Equipment, Goods, General Intangibles and Negotiable Collateral. . .

(Exhibit A, Loan and Security Agreement).

14. The term "Accounts" is defined in the Loan and Security Agreement as follows:

> "Accounts" means all presently existing or hereafter arising accounts receivable due to [SFCA] (including medical and health-care-insurance receivables), book debts, notes, drafts and acceptances and other forms of obligations now or hereafter owing to [SFCA], whether or not arising from the sale of lease of goods or the rendition of services by [SFCA] (including any obligation that might be characterized as an account, contract right, general intangible or chattel paper under the UCC), all of [SFCA's] rights in, to and under all purchase orders now or hereafter received by [SFCA] for goods and services, all proceeds from the sale of Inventory, all monies due or to become due to [SFCA] under all contracts for the sale or lease of goods or the rendition of services by [SFCA] (whether or not yet earned) (including the right to received the proceeds of said purchase orders and contracts), all collateral security and guarantees of any kind given by any obligor with respect to any of the foregoing, all accounts payable to [SFCA] under any insurance policy and all goods returned to or reclaimed by [SFCA] that correspond to any of the foregoing.

3

(Exhibit A, Loan and Security Agreement § 1).

15. Thus, SFCA's accounts receivable from customers such as Target, and SFCA's right to payment for all sales of SFCA merchandise, which was part of First Capital's collateral for the loan (the "Collateral"), secured the funding First Capital agreed to provide in support of SFCA's commercial operations. SFCA's accounts and accounts receivable were assigned to First Capital and SFCA granted First Capital a first-priority security interest in these accounts under the express terms of the Loan and Security Agreement.

16. First Capital duly perfected its security interest in and to the Collateral, including SFCA's accounts receivable, by filing U.C.C. financing statements. Copies of First Capital's filed UCC-1 Financing Statements are attached hereto as **"Exhibit B."**

B. **First Capital's Right to Directly Litigate SFCA's Claims Against SFCA's Customers**

17. The Loan and Security Agreement also provides First Capital with the right to directly litigate any claims SFCA could assert against its customers. Specifically, § 8(a) of the Loan and Security Agreement states:

> (a) <u>Accounts</u>: [I]f [First Capital] so elects, [First Capital] will have the right at all times to settle, compromise, adjust, or litigate all Customer disputes directly with Customer or other complainant upon such terms and conditions as [First Capital] deems advisable. . .

(Exhibit A, Loan and Security Agreement). Thus, SFCA granted to First Capital in the Loan and Security Agreement the right to litigate claims directly with customers owing funds to SFCA and collect payment thereunder.

C. **The Product Shipments And Defendant's Failure To Remit Payment**

18. From April 4, 2008, through at least October 10, 2008 (the "Relevant Period"), during which First Capital provided SFCA with funds to conduct its commercial activities,

Defendant ordered, and SFCA delivered, various products to Defendant or a recipient designated by Defendant.

19. SFCA shipped merchandise to Defendant during the Relevant Period totaling at least $2,269,041.

20. Defendant requested each order shipped by SFCA to Defendant. An individual invoice for each order filled and shipped to Defendant, identifying the products shipped to Defendant and the amount owed by Defendant to SFCA for those products, was provided to Defendant upon each delivery (the "SFCA Invoices"). True and correct copies of examples of the SFCA Invoices related to merchandise shipped to Defendant during the Relevant Period are attached hereto as **"Exhibit C."**

21. Each SFCA Invoice includes the legend, "Payment Terms: NET 30," which reflects that Defendant was required to pay SFCA for the delivered products within 30 days of receipt (see Exhibit C).

22. SFCA fully performed its obligations to Defendant by delivering the products identified in the SFCA Invoices.

23. Defendant accepted delivery of the products shipped during the Relevant Period, and did not object to the quantity, condition, or quality of this merchandise.

**D.    The Demands For Payment Of The Outstanding Target Account**

24. On May 11, 2010, SFCA sent Target a letter requesting payment of outstanding amounts Target owed SFCA for products that were delivered to, and accepted by, Target. A true and correct copy of SFCA's May 11, 2010 letter is attached hereto as **Exhibit D**.

25. Target responded to SFCA with a letter dated June 21, 2010, in which Target refused to pay SFCA any portion of the outstanding amount (the "June 21st Letter"). A true and correct copy of the June 21st Letter is attached hereto as **Exhibit E**.

26. Defendant has to date failed to remit payment to SFCA for amounts owing under the SFCA Invoices, totaling $2,269,041 (the "Outstanding Target Account"). Defendant's failure to pay the Outstanding Target Account constitutes a breach of its obligations to SFCA, as memorialized by the SFCA Invoices, and conferred an unjust and unfair benefit on Defendant.

E.    **First Capital's Foreclosure On SFCA's Assets**

27. SFCA defaulted on its obligations to First Capital under the Loan and Security Agreement. Consequently, First Capital foreclosed on SFCA Collateral, including SFCA Accounts, on November 9, 2010, pursuant to Georgia Uniform Commercial Code Sections 9-620 through 9-622. Accordingly, First Capital owns the SFCA Accounts.

**FIRST CAUSE OF ACTION**
(Account Stated)

28. First Capital repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth at length herein.

29. Defendant ordered and received products from SFCA and was thus indebted to SFCA for payments for these items.

30. Defendant received invoices identifying the amounts due and owing for the products received.

31. Defendant did not timely object to the SFCA Invoices or give notice of any merchandise returns, claims, disputes or offsets within a reasonable time, and stated in the June 21st Letter that no such amount would be paid.

32. By receiving and accepting the SFCA Invoices and the products shipped without objection to the invoices or notice of any merchandise returns, claims, disputes or offsets within a reasonable time, Defendant assented to the outstanding amount reflected in these invoices and promised to pay SFCA this amount.

33. Defendant is thus liable to First Capital for accounts stated based on Defendant's status as SFCA's debtor, its assent to the terms of the outstanding invoices, and its promise to pay the Outstanding Target Account.

34. First Capital, as the secured creditor, assignee, and owner of the Outstanding Target Account, is entitled to the amount due on the Outstanding Target Account. Accordingly, Defendant owes First Capital no less than $2,269,041, exclusive of interest.

## SECOND CAUSE OF ACTION
(Goods Sold and Delivered)

35. First Capital repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth at length herein.

36. Defendant ordered and received products from SFCA.

37. Defendant accepted the products received from SFCA, has failed to remit payment when payment was due, and stated in the June 21st Letter that it refused to make any payment on the Outstanding Target Account.

38. By receiving and accepting the products without remitting payment when payment was due, and advising in the June 21st Letter that it would not make any payment, Defendant is liable for the price of the goods sold and delivered as well as damages related to its failure to pay amounts owing.

39. First Capital, as the secured creditor, assignee, and owner of the Outstanding Target Account, is entitled to the amount due for the products Defendant received. Accordingly, Defendant owes First Capital no less than $2,269,041, exclusive of interest, for goods sold and delivered.

## THIRD CAUSE OF ACTION
**(Breach of Contract)**

40. First Capital repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth at length herein.

41. Defendant and SFCA entered into an agreement whereby SFCA agreed to deliver, and Defendant agreed to pay for, certain products as reflected in the SFCA Invoices.

42. SFCA fully performed its obligations by delivering the products identified in the SFCA Invoices.

43. Defendant was obligated to remit payment for the full amount of the products requested and received.

44. Thirty (30) days has elapsed since all products and the SFCA Invoices relating to the products have been received by Defendant, and Defendant has failed and refused to make payment of the Outstanding Target Account despite demand, as Defendant advised SFCA in the June 21st Letter.

45. Defendant's failure to remit this payment constituted a breach of the agreement between SFCA and Defendant and resulted in damages in the amount of at least $2,269,041, plus interest.

46. First Capital, as the secured creditor, assignee, and owner of the Outstanding Target Account, is entitled to the amount due under the SFCA Invoices.

## FOURTH CAUSE OF ACTION
**(Unjust Enrichment)**

47. First Capital repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth at length herein.

48. Defendant ordered and received products shipped by SFCA during the Relevant Period that had a total value of $2,269,041.

49. SFCA and First Capital expected to be paid for those products.

50. Defendant failed to pay for the products.

51. Defendant's receipt of these products and its failure to remit payment conferred an unjust benefit on the Defendant.

52. Allowing Defendant to retain the funds owed under the Outstanding Target Account would be unfair to First Capital.

53. First Capital, as the secured creditor, assignee, and owner of the Outstanding Target Account, is entitled to the amount due for the products Defendant received.

### FIFTH CAUSE OF ACTION
(Quantum Meruit)

54. First Capital repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth at length herein.

55. During the Relevant Period, SFCA in good faith delivered to Defendant products requested by Defendant that had a reasonable value of $2,269,041.

56. Defendant accepted the products delivered.

57. SFCA and First Capital expected to be compensated for these products.

58. To date, Defendant has failed to remit payment for the products requested, received, and accepted.

59. First Capital, as the secured creditor, assignee, and owner of the Outstanding Target Account, is entitled to the amount due for the products Defendant received.

WHEREFORE, First Capital prays the Court for relief and demands judgment as follows:

    A. Directing Defendant pay First Capital an amount to be proven at trial, but not less than $2,269,041, plus pre-judgment and post-judgment interest thereon;

    B. Awarding First Capital its costs and expenses for this action, including attorneys' fees; and

    C. Granting such further and other relief as the Court may deem just and proper.

Respectfully submitted,

BRIOL & ASSOCIATES, PLLC

/s/  Vicki J. Bitner
Mark J. Briol (MN Bar # 126731)
Vicki J. Bitner (MN Bar # 213998)
3700 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
mark@briollaw.com
vicki@briollaw.com
(612) 337-8410 – telephone
(612) 337-5151 – facsimile
and

KATTEN MUCHIN ROSENMAN LLP

Bruce M. Sabados (NY Bar # 2344380)
(*pro hac vice application forthcoming*)
Gregory C. Johnson (NY Bar # 4733929)
(*pro hac vice application forthcoming*)
575 Madison Avenue
New York, NY  10022-2585
bruce.sabados@kattenlaw.com
gregory.johnson@kattenlaw.com
(212) 940-6369 – telephone
(212) 940-6649 - facsimile

ATTORNEYS FOR PLAINTIFF

Dated:  March 25, 2011